# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2026

Lyle W. Cayce
Clerk

_____

No. 25-30541

_____

Derek Brown; Julia Barecki-Brown,

*Plaintiffs—Appellants*,

*versus*

Derrick Burmaster; Shaun Ferguson; New Orleans City,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-847

_____

Before Smith, Willett, and Ramirez, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

A rescue puppy named Apollo was 16 weeks old when New Orleans Police Officer Derrick Burmaster, responding to a reported disturbance, fired three shots and killed him. A jury found that Burmaster violated the Fourth Amendment rights of Apollo's owners—yet shielded him from liability. That pairing may seem counterintuitive, but the qualified-immunity doctrine explains it. The verdict's second pairing has no explanation at all: the same jury found that no City policy caused Apollo's death—and then held the City liable for it anyway. This appeal asks whether both results can stand.

No. 25-30541

Only the first can. Qualified immunity divides labor between judge and jury: the court identifies the clearly established law, and the jury resolves disputed facts and applies that law to the officer's conduct. The district court honored that division, and the verdict for Burmaster stands. The verdict against the City cannot. In a municipal-liability case, causation is not incidental—it is the whole case. A jury cannot reject the premise yet impose the consequence. It cannot find in one breath that no City policy caused Apollo's death and demand in the next that the City answer for it.

We therefore AFFIRM the judgment for Burmaster, REVERSE the judgment for the City, and REMAND for a new trial on municipal liability.

## I. Background

In April 2021, Derek Brown and Julia Barecki-Brown got into an argument at their New Orleans home.[1] Officer Burmaster arrived after neighbors called the police.[2] After waiting for another officer, the two officers approached the home.[3] When Burmaster heard a dog bark, he drew his firearm; the other officer tapped him on the shoulder and indicated that they should leave the yard.[4] Burmaster's partner retreated through the same gate the officers had used to enter, but Burmaster remained inside the gate as two

---

[1] This background comes from the summary-judgment record recounted in our earlier interlocutory decision. *See Brown v. Burmaster*, No. 23-30180, 2025 WL 227785, at *1 (5th Cir. Jan. 17, 2025) (per curiam). The Browns elected not to include the trial transcript in the appellate record. Because trial evidence "supersedes" the summary-judgment record, we offer this account only for orientation and do not rely on it to resolve this appeal. *See Dupree v. Younger*, 598 U.S. 729, 734 (2023) (cleaned up).

[2] *Brown*, 2025 WL 227785, at *1.

[3] *Id.*

[4] *Id.*

dogs came down the stairs into the courtyard.[5] One was Apollo, a 16-week-old puppy, who ran toward Burmaster.[6] Apollo, however, "did not bark, growl, jump, bare his teeth, or lunge."[7] Burmaster fired three shots, and Apollo died in his owners' arms.

The Browns sued Burmaster, the City of New Orleans, and the Superintendent of the New Orleans Police Department, alleging a Fourth Amendment violation and several state-law claims. Shortly before the first trial setting, Burmaster moved for summary judgment, invoking qualified immunity. The district court denied the motion, and Burmaster appealed. Another panel dismissed the appeal for lack of jurisdiction, concluding that Burmaster challenged the genuineness of the factual disputes rather than their materiality.[8]

After the district court denied a later motion for partial summary judgment, the case proceeded to trial. In a proposed pretrial order, the parties stated that "[t]he jury shall decide all disputed factual issues other than qualified immunity." But the appellate record contains no court-ordered pretrial order, and it does not reveal whether the district court adopted that provision.

The discussions that led to that decision are not in the appellate record, but the district court later explained that it declined to enforce the apparent agreement because "multiple conversations with counsel in chambers" revealed "great confusion as to what exactly [the defendants] agreed to." Ultimately, the court submitted the immunity question to the

---

[5] *Id.*

[6] *Id.*

[7] *Id.* The record indicates that Apollo was too young to bark.

[8] *Id.*

No. 25-30541

jury—but only after instructing the jury on the Browns' clearly established rights.

The jury returned a special verdict. It found that Burmaster "acted in an objectively unreasonable manner" and thereby harmed the Browns.[9] It also found Burmaster entitled to qualified immunity.

As to the City, the jury also returned two incompatible answers. It found that the City's policies did not cause Apollo's death. Yet,

---

[9] The objective-reasonableness finding concerns the Fourth Amendment merits inquiry. *See Barnes v. Felix*, 605 U.S. 73, 79 (2025) ("The touchstone of the Fourth Amendment is reasonableness, as measured in objective terms." (cleaned up)). Qualified immunity itself has only two prongs: whether the official violated a constitutional right, and whether that right was clearly established. *See Pearson v.* Callahan, 555 U.S. 223, 232 (2009) (describing "a two-step sequence for resolving government officials' qualified immunity claims"). Some of our older decisions layered on a "third component," asking in addition whether the official's conduct was objectively unreasonable in light of clearly established law. That label does not add a requirement; it restates one already there. When courts— including the Supreme Court—invoke "objective reasonableness," they are describing what the second prong already asks, not imposing a third. *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (explaining that liability "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken"); *Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (explaining that the second prong requires a plaintiff to "adequately plead that defendant's conduct was objectively unreasonable in light of clearly established law"). It could not be otherwise: it is always objectively unreasonable to violate clearly established law, so recasting that unreasonableness as a separate requirement adds nothing to the two-pronged test. We have said so directly, recently, and repeatedly. The "third component" is "a vestige of older case law that predates the Supreme Court's current test." *Parker v. LeBlanc*, 73 F.4th 400, 406 n.1 (5th Cir. 2023). "[T]here is no standalone 'objective reasonableness' element to the Supreme Court's two-pronged test for qualified immunity." *Hicks v. LeBlanc*, 81 F.4th 497, 503 n.14 (5th Cir. 2023) (quoting *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir. 2023)). Objective unreasonableness "is descriptive, not additive": it "explains how the clearly-established-law inquiry operates; it does not impose an extra hurdle beyond the Supreme Court's two-pronged framework." *Lewis v. Walley*, 168 F.4th 327, 332 n.2 (5th Cir. 2026). Nor must a plaintiff supply separate "reasonable officer evidence" to defeat the defense. *Ramirez v. Killian*, 113 F.4th 415, 430 (5th Cir. 2024).

notwithstanding the instruction that municipal liability requires causation,[10] it also found that "the City of New Orleans is liable" for violating the Browns' Fourth Amendment rights.

The jury also found negligence on the state-law claims, allocating 40% of the fault to Burmaster, 25% to each Brown, and 10% to the other officer. It awarded $10,400. That verdict is not before us.

The district court entered judgment for the Browns on their state-law claims but for the defendants on the constitutional claim. The Browns moved to amend the judgment or for a new trial, challenging both the qualified-immunity submission and the reconciliation of the City verdict. The district court denied that motion, and the Browns appealed.

## II. Discussion

Two questions decide this appeal: Could the district court submit qualified immunity to the jury? And can the jury's municipal-liability answers coexist? Yes to the first; no to the second.

### A. The Qualified-Immunity Verdict

The Browns challenge the qualified-immunity verdict in two ways. First, they contend that *Ramirez v. Killian*[11] barred the district court from submitting qualified immunity to the jury. Second, they argue that the parties' proposed pretrial order—stating that "[t]he jury shall decide all disputed factual issues other than qualified immunity"—precluded the court from doing so. Neither theory warrants reversal.

---

[10] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.17 (5th Cir. 2001) (explaining that municipal liability requires "both municipal culpability and causation").

[11] 113 F.4th 415.

No. 25-30541

*Ramirez* preserves a familiar allocation of responsibility. The court identifies the clearly established legal rule; the jury resolves disputed facts bearing on the officer's conduct.[12] When "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the [immunity] question."[13] The district court followed that framework here.

1. The Judge's Task and the Jury's

Qualified immunity has two prongs.[14] To overcome it, a plaintiff must show that (1) the "official's conduct violated a constitutional right of the plaintiff," and (2) "the right was clearly established at the time of the violation."[15] The second prong can require both legal and factual work. The legal question is what law was clearly established. The fact-bound question is whether the defendant's conduct violated that clearly established law.[16]

Our precedent has long recognized that allocation.[17] *Melear v. Spears* explained that if a district judge determines "that a factual dispute exists" or a defendant fails to seek summary judgment, the need for "pretrial, speedy immunity determinations" has passed.[18] "At this point," the court

---

[12] *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989).

[13] *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993).

[14] *See, e.g.*, *Lewis*, 168 F.4th at 332 n.2 ("Under current Supreme Court precedent, QI has only two prongs.").

[15] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[16] *See Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) (explaining that a denial of a qualified-immunity-based summary-judgment motion involves "two distinct determinations": that (1) "a certain course of conduct would," if established, violate "clearly established law" and (2) "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct").

[17] *See Melear*, 862 F.2d at 1184.

[18] *Id.*

continued, "the trier of fact must determine the objective legal reasonableness of an officer's conduct by construing the facts in dispute."[19] Once such a factual dispute exists, in other words, a properly instructed jury may resolve it.[20] We have repeatedly upheld that practice.[21]

The district court followed that path. It concluded that factual disputes prevented summary judgment. At trial, it instructed the jury on the relevant clearly established rule. The jury then resolved the fact-bound immunity question by applying that rule to Burmaster's conduct as it found the facts.

*Ramirez* does not require a different result. The Browns emphasize *Ramirez*'s statement that although "[t]he jury decides the factual question of whether the officer violated the plaintiff's rights—the first step of the qualified immunity analysis," "[i]t does not decide the purely legal question of whether the officer's actions were objectively reasonable in light of clearly established law—the second step."[22] Read in isolation, that language might suggest that the second prong never requires jury findings. But *Ramirez* cannot be read that way without putting it in conflict with *Melear*.

Context resolves the tension. *Ramirez* expressly reaffirmed *Melear*'s rule, quoting *Snyder v. Trepagnier* for the proposition that when "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question."[23] *Ramirez*'s reference to the

---

[19] *Id.*

[20] *See Presley*, 4 F.3d at 410.

[21] *See, e.g.*, *id.*; *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000); *Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998).

[22] *Ramirez*, 113 F.4th at 429 (emphasis omitted).

[23] *Id.* (emphasis omitted) (quoting *Snyder*, 142 F.3d at 800).

"purely legal question" is best understood as requiring the district court to identify the clearly established law—not as authorizing the judge to make the disputed factual findings needed to apply that law.

That reading also fits *Ramirez*'s procedural posture. The error there was the district court's demand for "reasonable officer evidence,"[24] not its decision to submit the fact-bound immunity question to the jury after defining the clearly established right. *Ramirez* discussed "the threshold question of whether the legal rule . . . given to the jury was clearly established,"[25] and it observed that the jury had found "that qualified immunity did not apply."[26] We therefore decline to read *Ramirez* as silently overruling *Melear*. Nor could it. Under our rule of orderliness, one panel cannot overrule another; that power belongs to the en banc court or the Supreme Court.[27]

The Browns' fallback argument—that *Melear* applies only if qualified immunity was never addressed before trial—mistakes a fact-bound summary-judgment denial for a merits ruling. *Melear* itself says its rule applies when "[a] district judge . . . determine[s] that a factual dispute exists that precludes summary judgment."[28] Such a ruling assumes the plaintiff's version of disputed facts; it does not decide what actually happened. *Presley*

---

[24] *See id.* at 430 (discussing the district court's demand for "reasonable officer evidence").

[25] *Id.* at 426.

[26] *Id.* at 429.

[27] *See, e.g.*, *Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

[28] 862 F.2d at 1184.

No. 25-30541

*v. City of Benbrook* confirms that a jury may resolve qualified immunity when factual disputes preclude summary judgment.[29]

\* \* \*

Taken together, *Melear* and *Ramirez* require the court to determine the clearly established legal rule and the jury to apply that rule to the facts it finds. Because the district court did just that, the Browns' first challenge fails.

2.  The Proposed Pretrial Order

The Browns next invoke the proposed pretrial order's carveout for qualified immunity. Even assuming Defendants agreed to withhold the fact-bound immunity issue from the jury, Rule 39(b) left the district court with discretion to relieve any resulting jury-trial waiver. The Browns have not shown that the court abused that discretion.

The Seventh Amendment preserves the right to a jury trial on factual issues underlying legal claims.[30] A party may waive that right.[31] But Rule 39(b) provides that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."[32] That discretion is generous: "the court has a broad discretion in determining whether to relieve a party from waiver of jury trial, and its decision will be reversed only for abuse of discretion."[33] Defendants asked the court to submit qualified immunity to

---

[29] 4 F.3d at 409–10.

[30] U.S. Const. amend. VII.

[31] *In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994) ("[A] litigant may waive his Seventh Amendment right to jury trial.").

[32] Fed. R. Civ. P. 39(b).

[33] *Daniel Int'l Corp. v. Fischbach & Moore, Inc.*, 916 F.2d 1061, 1064 (5th Cir. 1990); *see also Swofford v. B & W, Inc.*, 336 F.2d 406, 408 (5th Cir. 1964) ("Under [Rule 39(b)] the

the jury through their proposed instructions. Rule 39(b) therefore permitted the court to do so.

The record the Browns supplied cannot support a finding of abuse of discretion. "Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted."[34] But the Browns did not order the trial transcript, and the appellate record contains no contemporaneous explanation for the court's decision. We may not "look to a subsequent order denying a separate motion when reviewing an earlier order" for abuse of discretion, even if the later order addresses the same issue.[35] We could dismiss this portion of the appeal; instead, we limit review to the available record.[36] Having chosen to travel light, the Browns must accept the limitations of the record they supplied.

That record establishes no reversible error. It contains a proposed pretrial order whose status is uncertain and proposed jury instructions that placed the issue before the court. The Browns identify no prejudice from allowing the jury to consider qualified immunity. And if they mean to rely on a court-entered pretrial order, no such order appears in the record, and they did not press that theory below.[37] We therefore cannot find an abuse of discretion.

_____

court has a broad discretion in determining whether to relieve a party from waiver of jury trial, and its decision will be reversed only for abuse of discretion.").

[34] *Sec. & Exch. Comm'n v. Barton*, 79 F.4th 573, 579 (5th Cir. 2023) (citation omitted).

[35] *Id.*

[36] *Boze v. Branstetter*, 912 F.2d 801, 803 n.1 (5th Cir. 1990).

[37] The Browns occasionally suggest that the proposed language became binding because it appeared in a court-entered pretrial order. But no such order appears in the appellate record, and they did not advance that theory in the district court. In all events, district courts have broad discretion to create, enforce, and modify pretrial orders. *See*

No. 25-30541

## B. The City's Inconsistent Verdict

The Browns stand on firmer ground in challenging the City verdict. Question 4 asked whether "the Plaintiffs prove[d] by a preponderance of the evidence that Defendant the City of New Orleans is liable for a violation of their constitutional rights for any of the following reasons: (1) inadequately training, (2) inadequately supervising, or (3) inadequately disciplining Derrick Burmaster with respect to the use of force on dogs[.]" The jury answered "Yes." Question 5 asked whether "the Plaintiffs prove[d] by a preponderance of the evidence that Defendant the City of New Orleans's policies with respect to training, supervision, or discipline of Derrick Burmaster caused the killing of Apollo." The jury answered "No." One answer affirms what the other denies.

Because the jury returned only a special verdict, Rule 49(a) governs.[38] Although Rule 49(a) does not prescribe a remedy for inconsistent answers, our precedent does: "the answers must be consistent" "in order for a verdict to stand."[39] If they are not, "the case must be remanded for a new trial."[40]

Before ordering a new trial, though, "we must make a concerted effort to reconcile apparent inconsistencies if at all possible."[41] A new trial is

---

*Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 421 (5th Cir. 2020) (citation omitted); *Flannery v. Carroll*, 676 F.2d 126, 129–30 (5th Cir. 1982). The Browns have not shown an abuse of that discretion.

[38] *See* FED. R. CIV. P. 49(a)(1). In their brief, the Browns point instead to Rule 49(b), which governs when the court "submit[s] to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide." FED. R. CIV. P. 49(b)(1). In this case, however, the jury gave only a special verdict. Thus, Rule 49(b) does not apply.

[39] *Morrison v. Frito-Lay, Inc.*, 546 F.2d 154, 160 (5th Cir. 1977).

[40] *Id.*

[41] *Snyder*, 142 F.3d at 800 (cleaned up).

11

warranted "[o]nly if there is no view of the case that will make the jury's answers consistent."[42] No permissible view does so here.

Begin with the City's theory, which the district court adopted. The City reads the liability answer as establishing only deficient training, not liability itself. But Question 4 asked whether the City "is liable," not merely whether it inadequately trained, supervised, or disciplined Burmaster. And the charge told the jury that to prevail on their municipal-liability theory, the Browns had to prove "a causal connection between the alleged failure to train, supervise, and/or discipline and the alleged violation of the plaintiffs' constitutional rights." A "special verdict must . . . be construed in the light of the surrounding circumstances, including the instructions of the court."[43] Read in that light, the jury's liability answer cannot be reduced to a finding of culpability without causation.

The Browns offer their own reconciliation. They say the liability answer rested on the absence of a policy, whereas the no-causation answer concerned only an affirmative policy.

Whether or not the Browns preserved that theory, it fails on the merits. The jury was instructed that "inadequate training, supervision, and/or discipline" could be the "City policy or custom" supporting municipal liability. The jury's finding that no City policy concerning training, supervision, or discipline caused Apollo's death cannot coexist with a finding that the City was liable because of those same failures.

---

[42] *Id.*

[43] *Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 472 (5th Cir. 1991) (citation omitted).

No. 25-30541

The two answers are irreconcilable. The verdict form and charge leave no room to treat the same alleged failures as both causing and not causing the same constitutional injury.

\* \* \*

Municipal liability requires "both municipal culpability and causation."[44] The jury found causation absent and liability present—a verdict at war with itself. Because those findings cannot be harmonized, municipal liability must be tried again.

### III. Conclusion

The district court respected the line our cases draw between the judge's legal role and the jury's factfinding role. The qualified-immunity verdict therefore stands. The municipal-liability verdict does not: the jury found liability but no causation, and those answers cannot be reconciled.

We therefore AFFIRM the judgment for Burmaster, REVERSE the judgment for the City, and REMAND for a new trial on municipal liability.

---

[44] *See Piotrowski*, 237 F.3d at 578 n.17.